IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**JOHN DAVID MOONEY**                                                            **PLAINTIFF**

**V.**                                                **CIVIL ACTION NO. 2:22-cv-35-KS-LGI**

**KILOLO KIJAKAZI, ACTING**
**COMMISSIONER OF SOCIAL SECURITY**                    **DEFENDANT**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

    John Mooney appeals the final decision denying his applications for a period of disability and Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge ("ALJ"). Having carefully analyzed the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that this matter be affirmed.

    In November 2019, Plaintiff filed disability applications alleging an onset date of July 20, 2018. Plaintiff was 41 years old on his alleged onset date, with a high school education and past relevant work as a construction worker and industrial work mechanic. Following agency denials of his applications, an ALJ rendered an unfavorable decision finding that Plaintiff had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review. He now appeals that decision.

    The evidence, detailed in the memorandum briefs and the ALJ's decision, will not be repeated in depth here. Plaintiff, who has a history of Crohn's disease, reported in

November 2019 that he had been having intermittent symptoms for about two years that had worsened over the past two months. At the administrative hearing, he testified that he must frequently sit or lie down because his constant stomach pain increases the more he moves. His symptoms also cause him to go to the bathroom 7-12 times per day. He eats little food as result and has a limited diet of bland, gluten-free foods. The lack of nutrients prevents him from gaining weight and causes him to feel lightheaded all the time. Plaintiff estimated that he can lift or carry about 20 to 25 pounds but cannot sit or walk longer than 40 minutes before having to lie down.

At step one of the five-step sequential evaluation,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. At steps two and three, the ALJ found that although Plaintiff's Crohn's disease/inflammatory bowel disease were severe, they did not meet or medically equal any listing. At step four, the ALJ found that Plaintiff could perform work within the sedentary range with the residual functional capacity to:

> stand or walk up to 2 hours in an 8-hour day; sit up to 6 hours in an 8-hour day; lift, carry, push, or pull up to 20 lbs. occasionally and 10 lbs. frequently; can never climb ladders, ropes, or scaffolds; can never crawl; must avoid all exposure to unprotected heights and hazardous machinery; must avoid vibrations; can occasionally stoop, climb ramps and stairs, and kneel; is limited to only occasional exposure to extreme cold and heat, fumes, odors, dusts, gases, and poorly ventilated areas; and can frequently crouch and balance.

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, he can perform work as a document preparer, tube operator, and an address clerk.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: (1) whether there is substantial evidence in the record to support the ALJ's decision; and (2) whether the decision comports with relevant legal standards. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021); *Salmond v. Berryhill*, 892 F.3d 812, 816 (5th Cir. 2018). The United States Supreme Court has made clear:

> The phrase "substantial evidence" is a term of art used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 203 L. Ed. 2d 504, 139 S. Ct. 1148, 1154 (2019) (citations and internal quotations and brackets omitted); *see also Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). On judicial review, this Court may not re-weigh the evidence, try the case de novo, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

**Discussion**

Plaintiff assigns three points of error on appeal that charge the ALJ with failing to properly evaluate the medical opinions of record and failing to fully evaluate his subjective complaints. The Commissioner counters that the ALJ's decision is supported by substantial evidence and complies with the applicable legal standards. Given the record in this case, the Court finds no basis for reversal or remand.

**1.**

As his first point of error, Plaintiff contends the ALJ failed to properly evaluate the agency physician's opinion in determining his residual functional capacity. An ALJ's residual functional capacity determination is an assessment, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his or her impairments. 20 C.F.R. § 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). It is not a medical opinion, but an administrative finding of fact. Social Security Ruling 96–8p, *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996) n. 4). The sole responsibility for assessing a claimant's residual functional capacity rests with the ALJ, who is not required to incorporate limitations in the residual functional capacity determination that he did not find to be supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). In recent years, social security regulations have been revised so that no specific evidentiary weight, including controlling weight, is to be given to medical opinions from treating sources in determining residual functional capacity. 20 C.F.R. § 404.1520(c) (2019). Under the new regulations, supportability and consistency

4

of medical opinions are the most important factors, and ALJs may, but are no longer required to, explain how they considered other factors. *Id.* But an ALJ remains free to assign little or no weight to the opinion of any physician when it is unsupported by the evidence. *Bayer v. Colvin*, 557 F. App'x 280, 287–288 (5th Cir. 2014) (citations omitted).

Relevant here, the record reflects that two agency physicians opined that Plaintiff could perform a reduced range of sedentary work. The ALJ found both opinions persuasive because they were generally supported and consistent with the claimant's treatment history, but she did not adopt either in its entirety, explaining that she added "additional standing-related and postural limitations to lessen the physical stress the claimant must endure and to guard against any potential increase in the claimant's symptoms." As noted, the ALJ specifically found that Plaintiff could kneel, frequently crouch and balance, and sometimes stoop, climb ramps, and stairs, but he could never climb or crawl ladders, ropes, or scaffolds, and must avoid all exposure to unprotected heights, hazardous machinery, and vibrations, with only the occasional exposure to extreme temperatures and environmental irritants. The ALJ explained that she added these limitations to accommodate "the claimant's gastrointestinal issues by limiting the claimant's "lifting [], standing, and walking work demands; by restricting the claimant's postural activities; and by restricting his exposure to pulmonary irritants, hazards, and temperature extremes." Plaintiff does not object to these additional limitations but contends the ALJ's consistency and supportability analysis was not thorough enough, and

5

her failure to adopt the agency physician's opinion that he "should have easy and frequent access to bathroom[s] at [the] workplace" was error. These arguments are unavailing.

The available evidence of record when the agency physician issued his opinion in June 2020 reflects that Plaintiff had begun taking Humira for his Crohn's disease in January 2020. And while his symptoms improved as result, reducing his bathroom frequency in half by April 2020, he was still reporting 4-to-5-bathroom trips per day in June 2020. Evidence generated after the agency physician's opinion reveals that by September 2020, Plaintiff was reporting "a couple of" bathroom trips per day; by November 2020, he was reporting a "mild flare of symptoms;" and, by March 2021 he was reporting "only 1 bowel movement [per day] and never more than 3." His weight was also stable, and he did not require Imodium for symptom relief. In formulating a residual functional capacity that would accommodate Plaintiff's gastrointestinal issues, the ALJ observed that treatment records suggested that his symptoms had "decreased in severity" and the "rates at which the claimant generally reported stooling could be accommodated by the normal breaks usually provided in the workplace." As other courts have recognized, "in an eight-hour workday, a worker typically is allocated a lunch period, plus two breaks," *Bissell v. Berryhill*, No. CV 17-1294, 2019 WL 908258, at *1 (W.D. La. Feb. 1, 2019), *report and recommendation adopted*, No. CV 17- 1294, 2019 WL 885920 (W.D. La. Feb. 22, 2019), and "[a] worker can use the bathroom during any of these breaks, as well as before and after work, without being off-task during working hours." *Rhonda E. G. v. Saul*, No. 8:20-CV-01423 KES, 2021 WL 2262552, at *7 (C.D. Cal. June 3, 2021). *See* Policy Interpretation Ruling Titles II and XVI: Determining

Capability to Do Other Work — Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, SSR 96-9p, 1996 WL 374185, at *6 (noting that a normal workday contemplates "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals").

    Plaintiff argues the ALJ's finding is insufficient, nevertheless, because it fails to address the agency physician's opinion that he needed "easy and frequent bathroom access." An ALJ is tasked with considering the totality of the evidence, however, and can reject any opinion, in whole or in part, "when the evidence supports a contrary conclusion." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (superseded by statute on other grounds). Under the regulations, the ALJ is specifically required to consider whether new evidence received "after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." 20 C.F.R. § 404.1520c(c)(5). Given that the evidence generated after the agency physician's opinion showed continual gastrointestinal improvement through Plaintiff's last medical visit of record, it was not unreasonable for the ALJ to conclude that the severity of Plaintiff's symptoms had decreased to the point that his bathroom needs could be accommodated by the customary work breaks. Plaintiff counters on appeal that the unpredictable and urgent nature of his condition, however, would not allow him to wait until scheduled work breaks, and that despite his improvements, "at his best point medically," he still "needed the bathroom as much as 3 times per day." But here again, in his last visit of record, Plaintiff reported experiencing "only 1 bowel movement [per day] and never more than 3" (frequency)

7

without the need for Imodium (urgency). Without any objective medical evidence that his condition worsened, or that he was precluded from going to the bathroom before or after work, these arguments do not persuade.

As for Plaintiff's contention that the ALJ's supportability and consistency analysis was deficient, the undersigned does not so read her decision. It is not difficult to discern from her narrative discussion that she found that the physician's bathroom limitation was unsupported and inconsistent with the evidence as a whole, and the reasons why. To the extent that the Court finds the ALJ did not provide sufficient explanation of her consideration of this opinion, however, Plaintiff fails to show that if the ALJ had given further explanation, that she would have adopted the limitation. *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023). Considering the specific facts here, the undersigned submits that any error was harmless. *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005) (applying the harmless error doctrine to a social security case); *see also Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (observing that "procedural improprieties will ... constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision").

The transcript from the administrative hearing reflects that the vocational expert testified that Plaintiff could perform work within the limits of the assessed residual functional capacity even if he were "off task" 10% of the workday. Though the line of questioning focused on the impact of an individual reclining during the workday, the vocational expert's testimony was clear: an individual away from his or her workstation

8

"for whatever reason" could perform the identified jobs so long as it does not exceed this limit.  Though on appeal Plaintiff asserts that his need for "easy and frequent access to the bathroom at the workplace," is a potentially work-preclusive limitation, his representative did not pose any questions about bathroom usage or challenge the vocational expert's testimony in this regard at the administrative hearing.  And he does not point to any objective evidence on appeal that the current nature of his condition would cause him to be off task more than 10%.  On the other hand, the vocational expert's testimony, coupled with objective evidence that Plaintiff's symptoms improved enough that he was stooling, without Imodium, only once, but never more than three times in a *24-hour day,* substantially supports the ALJ's finding that Plaintiff could work an 8-hour day with normal break accommodations.

Ultimately, it is Plaintiff's burden to prove a more restrictive residual functional capacity than the residual functional capacity assessed by the ALJ.  The ALJ reasonably concluded that Plaintiff failed to meet his burden, and he has not shown that "any reasonable adjudicator would be compelled to conclude to the contrary.'" *Hollinger v. Kijakazi*, No. 20-61103, 2021 WL 3775376, at *2 (5th Cir. Aug. 25, 2021), F. App'x. 214–15 (quoting *Nasrallah v. Barr*, 207 L. Ed. 2d 111, 140 S. Ct. 1683, 1692 (2020)).

## 2.

As a second point of error, Plaintiff asserts the ALJ erred in failing to consider his physician's treatment note that he was "disabled due to advanced[,] difficult to control Crohn's disease." The argument is not well-taken, however.  The physician's statement does not meet the regulatory definition of a medical opinion, as it does not delineate any

limitations or activities that Plaintiff should avoid. 20 C.F.R. § 404.1513(a)(2). There is no such opinion, in fact, from a treating physician of record. It is also well-settled that a "determination by a treating physician that an applicant is 'disabled' or 'unable to work; is not a medical opinion entitled to deference, but rather a legal conclusion 'reserved to the commissioner.'" *Thibodeaux v. Astrue*, 324 F. App'x 440, 444 (5th Cir. 2009) (quoting *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003)). Moreover, the record reflects that the physician made the notation during Plaintiff's visit in September 2020, when Plaintiff was still reporting 4–5-bathroom visits per day. He did not, however, make the same notation at the last visit of record in March 2021. Rather, at that time, the physician notes that Plaintiff reported "a mild flare of symptoms" when he was last seen in November, but his weight was stable; he was not requiring Imodium; and, he was reporting "only 1 bowel movement and never more than 3" per day. No reversal or remand is warranted on this issue.

### 3.

As his third and final point of error, Plaintiff contends the ALJ's credibility determination is flawed because she failed to consider his subjective reports of bathroom usage. In support, Plaintiff points only to the ALJ's failure to reference his hearing testimony that he frequents the bathroom 7 to 12 times per day when summarizing the facts in her written decision.

First, while the ALJ did not reference Plaintiff's reports of bathroom frequency in this section of her opinion, she discusses it elsewhere in her analysis, along with Plaintiff's other subjective complaints. In so doing, the ALJ did not discuss in detail

10

every factor in 20 C.F.R. § 1529(c)(3).[2] But the law is well established in this Circuit that an ALJ "is not required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility." *Clary v. Barnhart*, 214 F. App'x 479, 482 (5th Cir. 2007) (citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (emphasis in original)).  It is equally settled that "[w]hile an ALJ must consider an applicant's subjective complaints of pain, he is permitted to examine objective medical evidence in testing the applicant's credibility." *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985).  When an ALJ does so, he or she "may find, from the medical evidence, that an applicant's complaints . . . are not to be credited or are exaggerated." *Id.*

In assessing Plaintiff's disability applications here, the ALJ considered Plaintiff's subjective complaints but concluded they were not credible to the extent alleged.  When a claimant's statements about the intensity, persistence, or limiting effects of symptoms are not supported by objective evidence, the ALJ has the discretion to make a finding on their credibility and the ALJ's determination is entitled to considerable deference. *Britton v. Saul*, 827 F. App'x 426, 431 (5th Cir. 2020).  The undersigned submits the ALJ's credibility determination is entitled to considerable deference here.  Her decision is not only a fair summary and characterization of the medical records, but she accurately observed that Plaintiff's gastrointestinal symptoms, including bathroom frequency, decreased in severity after treatment.  This decrease in frequency is evidenced by

---

[2] 20 C.F.R. § 1529(c)(3) (providing a non-exhaustive list of relevant factors to consider in determining whether an individual is disabled, including daily activities; location, duration, frequency, and intensity of symptoms; precipitating and aggravating factors, and effectiveness of medication).

11

Plaintiff's own subjective reports that were contemporaneously given to his physicians from 2020 to 2021. And as noted, the ALJ did not discount Plaintiff's subjective complaints entirely, but credited them by incorporating "additional standing-related and postural limitations to lessen the physical stress the claimant must endure and to guard against any potential increase in the claimant's symptoms." Accordingly, the ALJ considered all the evidence before her, including Plaintiff's testimony. But it was for the ALJ to decide how to weigh that evidence. Given the record before her, the ALJ reasonably concluded that the degree of symptoms alleged by Plaintiff were not so credible as to preclude him from work within the limits of his residual functional capacity. Substantial evidence supports this finding.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended,

effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

    SO ORDERED on July 31, 2023.

<u>s/ LaKeysha Greer Isaac</u>
UNITED STATES MAGISTRATE JUDGE
